UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLO VARTINELLI,

              Plaintiff,                                Hon. Wendell A. Miles

v.                                                Case No. 1:03 CV 323

ROBERT MOSKALIK, et al.,

              Defendants.

_____/


**REPORT AND RECOMMENDATION**

      This matter is before the Court on Plaintiff's Motion for Summary Judgment with Respect to Liability Only Against Defendant Claire Hammer, (dkt. #112), and Defendant Hammer's Cross-Motion for Summary Judgment and Defendants Hammer's and Malatinsky's Motion to Dismiss, (dkt. #115).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Plaintiff's motion be **denied** and Defendants' motion be **denied**.


**BACKGROUND**

      Plaintiff is a prisoner under the jurisdiction of the Michigan Department of Corrections (MDOC).  He is presently confined at the Thumb Correctional Facility, but the incidents giving rise to the present action occurred while Plaintiff was incarcerated at the Lakeland Correctional Facility (Lakeland).  (Complaint at ¶ 2).

      Plaintiff asserts that he suffers from a severe allergy to the odor of shellfish products, the exposure to which triggers "severe respiratory distress. . .including hives and severe muscle pain."  *Id.*

at ¶ 8.  Plaintiff also asserts that the consumption of dairy products causes him to experience "severe gastrointestinal problems."  He further alleges that he experiences back pain.  *Id.*

On or about July 15, 1998, Plaintiff was transferred from the Gus Harrison Correctional Facility (Gus Harrison) to Lakeland.  (Complaint at ¶ 7; Affidavit, Dkt. #29, at ¶ 2).  Upon his arrival at Lakeland, Plaintiff informed Defendant Harter of his "severe" medical needs.  (Complaint at ¶ 7 and Exhibits B-B8; Affidavit, Dkt. #29, at ¶ 2).  In response, Defendant Harter allegedly informed Plaintiff that his medical needs "did not hold water" and that "we do not play that game here."  (Complaint at ¶ 10; Affidavit, Dkt. #29, at ¶ 2).

Plaintiff provided to Lakeland officials memoranda and medical details indicating that at Gus Harrison he had been permitted to eat his meals in his cell because he was allegedly allergic to fish.  (Complaint, Exhibits B-B8).  Plaintiff requested that he be afforded the same accommodation at Lakeland.  (Complaint at ¶ 11).  In response, Plaintiff was informed by the warden that the Lakeland "Health Care staff, including Dr. Moskalik," had concluded that "meals in are unnecessary and that you can eat in the Food Service Building."  (Complaint, Exhibit C).  Plaintiff was further informed that his request could not be accommodated "due to staffing levels."  *Id.*

Plaintiff was not satisfied with this response and on July 28, 1998, he submitted a Health Care request in which he requested that his previous medical detail, permitting him to eat in his cell when fish was served in the dining facility, be accommodated.  (Complaint, Exhibit E).  On August 12, 1998, Defendant Hammer responded to Plaintiff's request, stating that

> Milk [and] fish can be avoided on your own.  A low fat intake can also
> be done on your own.  No detail will be issued.  You will be called out
> for diet counseling re weight reduction.

*Id.*

As a result, Plaintiff was compelled to avoid the presence of fish by regularly skipping meals and relying on leftovers provided to him by other inmates.  (Dkt. #29, Exhibits 13-1, 13-4, 13-6).

On March 10, 2000, Plaintiff met with Defendant Hammer.  (Complaint at ¶ 15; Hammer Affidavit at ¶ 8).  Plaintiff allegedly asked Defendant Hammer "why she canceled all his previously prescribed diets."  (Complaint at ¶ 15).  Hammer informed Plaintiff that "we don't do that here, in Lakeland."  (Complaint at ¶ 15; Hammer Affidavit at ¶ 8).

Plaintiff claims that on April 3, 2000, he asked Defendant Malatinski to explain "his reasons for suddenly canceling all previous medical treatment ordered by specialist."  *Id.* at ¶ 16.  Malatinski allegedly responded by informing Plaintiff that "he did not approve Plaintiff's legal assistance to prisoner Melvin Graham."  *Id.*  Defendant Malatinski denies that this conversation (or any conversation regarding Plaintiff's alleged allergies) ever occurred.  (Malatinski Deposition at 32-35).  According to Plaintiff, he was later instructed by Defendant Moskalik that if he wanted to get "his medical problems solved," he should "distance [himself] from assisting Mr. Graham with his law suit."  *Id.* at ¶ 17.

On April 24, 2000, the food services supervisor informed Defendant Hammer that Plaintiff stated that he "cannot eat the tuna casserole tonight."  (Complaint, Exhibit K-1).  Defendant Hammer instructed the food services supervisor to "serve diet as written making no substitute for the tuna casserole since 'no fish' not on detail.  Prisoner can choose to not eat."  Defendant Hammer further reported that Plaintiff "has no medical detail for this and there is no medical indication for it."  *Id.*

Plaintiff asserts that on January 1, 2001, he was given a snack bag containing tuna fish.  *Id.* at ¶ 20.  Plaintiff asserts that he suffered an "adverse reaction" as a result.  (Complaint, Exhibit L2).

Plaintiff was transferred from Lakeland to Gus Harrison on January 12, 2001.  *Id.* at 21.

On March 2, 2001, the following memorandum was issued regarding Plaintiff's alleged fish allergy:

> Please accept this note as a notice to all staff that per T. Bell, Deputy Warden ACI, the above referenced prisoner (Plaintiff) is not to be present in any building on these grounds where fish products are being prepared, stored, or consumed due to the fact that he has a medical condition which precludes same.

(Complaint, Exhibit N).

On January 30, 2002, Lakeland officials referred Plaintiff to a specialist in an effort to obtain a "better definition of [Plaintiff's] allergies." (Dkt. #113, Exhibit 20). On February 26, 2002, Plaintiff was examined by an allergy specialist, Dr. Frederick DeTorres. (Dkt. #113, Exhibit 21). The doctor concluded that Plaintiff suffered from (among other things) a "food allergy secondary to the smell of various fish and particular cod which is eaten and prepared in the prison system." Dr. DeTorres further observed that "the smell of cod in itself seems to trigger a reaction compatible with mild-to-moderate anaphylaxis such as throat tightness, hoarseness, tongue swelling, nausea, shortness of breath and wheezing. . .[as well as] muscle aches, joint pain and tendon pain." *Id.*

In August 2002, Plaintiff was transferred to the Brooks Correctional Facility. (Affidavit, Dkt. #29, ¶ 11). Plaintiff asserts that following his transfer his condition worsened. *Id.* at ¶¶ 11-12. Plaintiff asserts that subsequent medical tests revealed that he suffers from "myositis/angioedema" caused by "repeated exposure to allergens." *Id.* at ¶¶ 12-14. Prison officials subsequently approved for Plaintiff a "permanent accommodation for fish allergy," permitting Plaintiff to eat a "tray in his cell on days when fish is being served." (Dkt. #29, Exhibit 19).

Plaintiff filed the present action on May 12, 2003, against Defendants Moskalik, Malatinski, Harter, and Hammer. Plaintiff claimed that Defendants were deliberately indifferent to his

serious medical needs and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff further asserted that Defendant Malatinski improperly retaliated against him in violation of the First Amendment. On September 30, 2004, the Honorable Wendell A. Miles granted summary judgment to Defendant Malatinsky as to Plaintiff's retaliation claim and dismissed several of Plaintiff's other claims for failure to properly exhaust administrative remedies. (Dkt. #50, 59). The only remaining claims in this action are Plaintiff's Eighth Amendment claims against Defendants Hammer and Malatinsky, which involve three alleged incidents taking place between March 10, 2000, and April 24, 2000. Plaintiff has moved for summary judgment (as to liability only) against Defendant Hammer. Defendants Hammer and Malatinsky have also moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996); *Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also*, *Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 813, 819 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also*, *Terry Barr Sales Agency*, 96 F.3d at 819; *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also*, *Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997). Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

I.       **Exhaustion**

As previously noted, many of the claims asserted in Plaintiff's original complaint were dismissed for failure to exhaust administrative remedies. Defendants now request that the remainder

of Plaintiff's claims be dismissed pursuant to the total exhaustion rule recently announced by the Sixth Circuit Court of Appeals.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement applies to all actions "brought with respect to prison conditions," regardless of the wrong alleged or the type of relief sought. *Id.*

The Sixth Circuit recently held that the Prison Litigation Reform Act mandates "total exhaustion." *Jones-Bey v. Johnson*, 407 F.3d 801, 806 (6th Cir. 2005). Thus, when a prisoner files a "mixed" complaint, alleging both exhausted and unexhausted claims, the entire action must be dismissed if the prisoner has failed to exhaust all available administrative remedies as to *any* of the claims in the complaint. *Id.* at 805-09. The *Jones-Bey* decision was issued long after the initiation of the present action. While the Court agrees that this decision must be retroactively applied in this matter, *see In re Federated Department Stores, Inc.*, 44 F.3d 1310, 1317 (6th Cir. 1995) (quoting *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993), such application does not result in the relief Defendants seek.

On September 30, 2004, the Honorable Wendell A. Miles issued an Order adopting the undersigned's recommendation that (a) Defendant Malatinsky be granted summary judgment as to Plaintiff's retaliation claim, and (2) several of the other claims asserted in Plaintiff's complaint be dismissed for failure to exhaust administrative remedies. (Dkt. #59). As a result, Plaintiff's unexhausted claims (along with his retaliation claim) were dismissed from the complaint and the remaining claims permitted to go forward. The *Jones-Bey* decision announcing the total exhaustion rule was issued by

the Sixth Circuit on April 27, 2005. While the *Jones-Bey* decision must be retroactively applied, as of the date it was announced the only claims remaining in this matter were properly exhausted.

In *Ford v. Rodda*, 2005 WL 2346881 (E.D. Mich., Sept. 26, 2005), the court was faced with the identical issue presently before this Court - whether retroactive application of the total exhaustion rule results in the dismissal of a complaint whose unexhausted claims were dismissed prior to the announcement of the *Jones-Bey* decision. Noting that prior to the announcement of the *Jones-Bey* decision the unexhausted claims "were dismissed. . .effectively amending the complaint so that only exhausted claims remain," the *Rodda* court concluded that "it is the amended complaint to which the *Jones-Bey* rule must be applied since it, not the original complaint, is the operative legal document in the case." *Id.* at *4. The court then concluded as follows:

> To dismiss the case now, the Court would have to conclude that when it dismisses a claim from a complaint, the complaint still for all legal purposes contains the dismissed claim. The defendants provide no case law that would suggest that *Jones-Bey* was meant to change the effect of a dismissal on a complaint. The operative complaint now before the Court is not a "mixed" complaint, and *Jones-Bey* does not mandate its dismissal.

> Even if the Court were to read *Jones-Bey* to require the dismissal of the only remaining, exhausted claims, the result in this case likely would be that Ford would re-file the exact same claims that are now before the Court and the case would proceed. *See Jones-Bey*, 407 F.3d at 808. To dismiss this action now would exalt form over substance, frustrate the policy and principles supporting the total exhaustion rule, and amount to a wasteful expenditure of judicial resources.

*Rodda*, 2005 WL 2346881 at *4.

The Court finds persuasive the reasoning articulated by the *Rodda* court and Defendants have presented the Court with no authority suggesting that a different outcome is warranted.

Accordingly, the Court recommends that Defendants' motion to dismiss Plaintiff's complaint pursuant to the total exhaustion rule be denied.

**II.**     **Plaintiff's Eighth Amendment Claims Against Defendants Hammer and Malatinski**

As previously noted, the only claims presently before the Court are three claims that Defendants Hammer and Malatinsky violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

**A.**     March 10, 2000 Incident

Plaintiff first asserts that during a March 10, 2000 meeting with Defendant Hammer he asked her "why she canceled all his previously prescribed diets." The Court interpreted Plaintiff's inquiry as a request to be permitted to eat in his cell on days when fish is served in the dining facility. Defendant Hammer denied Plaintiff's request.

**B.**     April 3, 2000 Incident

Plaintiff claims that during an April 3, 2000 meeting he asked Defendant Malatinski to explain why "all previous medical treatment was suddenly cancelled." The Court interpreted Plaintiff's inquiry as a request to be permitted to eat in his cell on days when fish is served in the dining facility. According to Plaintiff, Defendant Malatinski denied his request in retaliation for Plaintiff having provided legal assistance to another inmate.

C.      April 24, 2000 Incident

Plaintiff next asserts that on April 24, 2000, he informed the food services supervisor that he was unable to eat the tuna casserole being served that evening.  The food services supervisor forwarded this information to Defendant Hammer, who instructed the food services supervisor to "serve diet as written making no substitute for the tuna casserole since 'no fish' not on detail.  Prisoner can choose to not eat."  Defendant Hammer further reported that Plaintiff "has no medical detail for this and there is no medical indication for it."

An examination of the evidence again compels the conclusion that there exist genuine issues of material fact with respect to these particular claims.

To prevail on his claims Plaintiff must establish that Defendants exhibited "deliberate indifference" to his "serious medical needs."  *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).  The analysis by which Defendants' conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  If the objective test is met, the Court must then determine whether Defendants possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendants "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847). It must further be recognized that deliberate indifference is more than mere negligence, as liability does not attach for "ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835. Instead, it must be established that Defendant knew of and disregarded an excessive risk to inmate health or safety; Defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference. *Id.* at 836-38.

Plaintiff was involved in two incidents in May 1998 which suggested that he was allergic to the smell of fish and that exposure to such produced potentially life-threatening results. On May 16, 1998, Plaintiff's bunkmate entered their cell with a fish sandwich, after which Plaintiff developed a rash and allegedly experienced difficulty breathing. (Dkt. #29, Exhibit 5). On May 25, 1998, Plaintiff again experienced what appeared to be an allergic reaction as a result of simply being "around fish in [the] housing unit." (Dkt. #29, Exhibit 7). Plaintiff's medical records contain notations of at least two other contemporaneous incidents in which Plaintiff apparently suffered what appeared to be an allergic reaction to the smell of fish. (Dkt. #113, Exhibits 7, 11).

Plaintiff's medical record also contains a record of a February 21, 2000 incident in which Plaintiff suffered what appeared to be an allergic reaction after "someone cooked fish in [the] unit microwave." (Dkt. #29, Exhibit 9). According to the accident report, Plaintiff developed swelling and began experiencing "problems breathing and speaking." *Id.* Plaintiff has also submitted affidavits from

several other prisoners which suggest that there were not isolated incidents.  (Dkt. #29, Exhibits 13-1, 13-2, 13-3, 13-4, 13-5, 13-6).

Thus, as of the date the three incidents in question occurred Defendants Hammer and Malatinski knew (or should have known) that mere exposure to fish may cause Plaintiff to experience a severe (and potentially life-threatening) allergic reaction.  As the Court previously observed, Defendants Hammer and Malatinski arguably refused to make the simplest of accommodations to prevent the most severe of medical circumstances.  Moreover, as Plaintiff correctly notes in his pleadings much of Defendant Hammer's deposition testimony can reasonably be interpreted as exhibiting a deliberate indifference to Plaintiff's desire to avoid exposure to fish.

In sum, Plaintiff has presented evidence supporting the conclusion that Defendants forced him to choose between (a) subjecting himself to potentially life-threatening allergens or (b) go without sufficient nutrition.  As the Court previously concluded, neither option is consistent with the Eighth Amendment.  However, while Plaintiff has marshaled substantial evidence in support of his claims, Defendants have likewise submitted evidence which, if believed by a jury, would entitle them to relief.

First, while Defendant Malatinski acknowledges examining Plaintiff on April 3, 2000, he asserts that Plaintiff never raised any concern regarding any potential food allergies he may have been experiencing.  (Malatinski Deposition at 32-35).  Defendant Malatinski further denies Plaintiff's allegation that he was questioned about the cancellation of Plaintiff's previous medical details.  *Id.* Plaintiff's treatment records are consistent with Defendant Malatinski's testimony. (Dkt. #116, Exhibit H).  With respect to Plaintiff's claim against Defendant Malatinski both parties have presented evidence which, if believed by a jury, would entitled them to relief.  Accordingly, Defendant Malatinski is not entitled to summary judgment.

-12-

Defendant Hammer has likewise presented evidence which, if believed by a jury, would entitle her to prevail. Defendant Hammer testified that she is not qualified to diagnose whether a prisoner suffers from a particular food allergy, but instead must rely on the results of objective testing or the conclusions of acceptable medical professionals. (Hammer Deposition at 10-21). With respect to Plaintiff's requests to be permitted to eat in his cell when fish was served in the dining facility, Hammer testified that she reviewed Plaintiff's medical records and discerned no reliable medical basis for such. *Id.* at 37-40. Defendant Hammer also testified that Plaintiff's record contained "many inconsistencies as far as fish allergy goes." *Id.* at 40. One such inconsistency identified by Defendant is the fact that while Plaintiff claimed to be allergic to the smell of fish, he repeatedly purchased tuna fish from the prison commissary. (Dkt. #116, Exhibits A-1, B). While Plaintiff asserts that he purchased tuna to barter with other prisoners, such is a fact question which this Court cannot resolve. The Court also notes that the record contains a treatment note, allegedly authored by Dr. Moskalik on July 21, 1998, which states that Plaintiff does not require a "no fish" diet. (Dkt. #113, Exhibit 16). Such further supports Defendant's position.

In sum, Plaintiff and Defendants have all presented evidence which, if believed by a jury, would entitle them to relief. Accordingly, the Court concludes that summary judgment is not appropriate as to any of Plaintiff's remaining Eighth Amendment claims.

## CONCLUSION

For the reasons articulated herein, the Court recommends that Plaintiff's <u>Motion for Summary Judgment with Respect to Liability Only Against Defendant Claire Hammer</u>, (dkt. #112), be **denied**, and <u>Defendant Hammer's Cross-Motion for Summary Judgment and Defendants Hammer's and Malatinsky's Motion to Dismiss</u>, (dkt. #115), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  December 27, 2005                         /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge

-14-